24CA1061 Morrison v ICAO 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1061
Industrial Claim Appeals Office of the State of Colorado
DD No. 9171-2024

Chris Morrison,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Stolle Machinery
Company, LLC,

Respondents.

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE SULLIVAN
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Chris Morrison, Pro Se

No Appearance for Respondents

¶ 1     Chris Morrison seeks review of a final order of the Industrial Claim Appeals Office (the Panel) disqualifying him from receiving unemployment insurance benefits based on his job separation from Stolle Machinery, LLC (Stolle). We set aside the Panel's order and remand for further proceedings.

## I.     Background

¶ 2     Beginning on July 10, 2023, Stolle employed Morrison as a network and computer systems administrator. When Stolle terminated his employment on January 25, 2024, Morrison applied for unemployment benefits from the Division of Unemployment Insurance (Division). After reviewing evidence regarding the reasons for Morrison's job separation, a Division hearing officer found Morrison disqualified from receiving benefits under section 8-73-108(5)(e)(XX), C.R.S. 2024, which forecloses benefits where the claimant's failure to meet job performance or other defined standards proximately caused the job separation.

¶ 3     The Panel affirmed the hearing officer's findings and legal conclusions.

1

## II.    Analysis

¶ 4      Morrison argues, as he did below, that the hearing officer predicated her proximate cause conclusion on three erroneous factual findings.  First, he challenges the hearing officer's finding that he breached Stolle's confidentiality policies by identifying himself with the username "chrisstolle" while participating in a public Microsoft online forum.  He argues the hearing officer incorrectly found this username constituted "sensitive" information, the public dissemination of which Stolle expressly forbade.  Second, he challenges the hearing officer's finding that he failed to meet job performance or other defined standards when communicating with non-IT users.  And third, he challenges the finding that he failed to meet those standards by accessing an email server without express authorization.  We address each finding in turn.[1]

---

[1] To the extent Morrison also contends for the first time on appeal that Stolle fraudulently induced him to enter into an employment contract in July 2023, and then breached the contract, that claim isn't properly before us, and thus we don't address it.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (appellate courts generally only review matters presented to and adjudicated by the lower tribunal).

A.    Standard of Review and Legal Principles

¶ 5    Under section 8-74-107, C.R.S. 2024, we may not disturb factual findings "supported by substantial evidence" and may only set aside the Panel's decision if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the factual findings don't support its decision; or (4) the decision is erroneous as a matter of law.  Substantial evidence is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding."  *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977).  Mere conclusions thus do not suffice.  *Wecker v. TBL Excavating, Inc.*, 908 P.2d 1186, 1188-89 (Colo. App. 1995) ("[E]vidence is not substantial if it . . . constitutes a mere conclusion.").  We decide as a matter of law whether substantial evidence exists.  *Pub. Serv. Co. of Colo. v. Pub. Utils. Comm'n*, 26 P.3d 1198, 1205 (Colo. 2001).

¶ 6    Section 8-73-108(5)(e)(XX) disqualifies a claimant from receiving benefits if the claimant's "failure to meet established job performance or other defined standards" proximately caused their job separation.  To evaluate proximate cause, the hearing officer

considers the totality of the evidence and determines the motivating factors in the employee's separation. *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989). A claimant is properly disqualified under subsection (5)(e)(XX) if the claimant knew what was expected of them and nonetheless failed to "satisfactorily perform the job." *Pabst v. Indus. Claim Appeals Off.*, 833 P.2d 64, 64-65 (Colo. App. 1992).

¶ 7 The disqualifying provisions of section 8-73-108(5)(e) "must be read in the light of the express legislative intent . . . to provide benefits to those who become unemployed through 'no fault' of their own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998) (quoting § 8-73-108(1)(a)). Thus, even if the hearing officer's findings may support a disqualification under that section, a claimant may still be entitled to benefits if the totality of the circumstances establishes that their job separation occurred through no fault of their own. *Id.* In this context, "fault" requires "a volitional act or the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation." *Id.* A claimant's "fault" for their job separation is "an ultimate legal

conclusion to be based on the established findings of evidentiary fact." *Id.* at 618-19.

## B. Confidentiality Policies

¶ 8 Morrison identified himself as "chrisstolle" while participating in the public online forum. The hearing officer found that this username constituted "sensitive" information "that could have led to the employer's network and led to cyber security issues."

¶ 9 Neither party disputes the hearing officer's findings that, at all relevant times, Stolle maintained written policies restricting employees' dissemination of confidential or sensitive information, and that Morrison was aware of those policies and the consequences of violating them. Specifically, under Stolle's policies, "[i]nformation about security measures for Stolle's computer and network systems are [sic] confidential and must not be released to people who are not authorized users of the involved systems unless the written permission from the [Chief Information Officer (CIO)] has first been obtained." Additionally, "[u]nless it has specifically been designated as public information, all Stolle information including Intellectual Property (IP) must be protected from disclosure to third parties." As pertinent here, in the context of

social media, employees must "treat [Stolle's] trade secrets, intellectual property, and other proprietary information [as] confidential and not do anything to jeopardize or unwittingly disclose these" on such platforms. Employees who violate these policies "are subject to disciplinary action, up to and including termination."

¶ 10 We conclude that the record lacks adequate support for the hearing officer's finding that Morrison breached the foregoing policies by identifying himself as "chrisstole" while participating in the public online forum. At the hearing, Stolle's Human Resources Generalist, Mark Darnell, claimed that the username constituted "sensitive information" because an unauthorized third party could "gather [additional sensitive] information regarding Stolle's network." Darnell offered no explanation for this claim, however, nor have we found any other evidence in the record explaining how a username made up solely of Morrison's first name and the company's name (which is in the public domain), in and of itself, constitutes "sensitive information."

¶ 11 Darnell's conclusory testimony that the username "chrisstolle" constitutes "sensitive information" doesn't qualify as substantial

evidence.  *See Wecker*, 908 P.2d at 1188-89 (mere conclusions don't constitute substantial evidence).  Because we have not located any other evidence in the record supporting the hearing officer's finding that Morrison's username constituted "sensitive information," this finding is insufficient to support the hearing officer's disqualification determination.  *See* § 8-74-107(4), (6).

### C.    Communications with Non-IT Users

¶ 12    The hearing officer also found that Morrison fell short of job performance standards by failing to communicate effectively with non-IT users on multiple dates between July 2023 and November 2023, and that this shortcoming, in part, proximately caused the termination of his employment.  Substantial evidence supports this finding.

¶ 13    The parties agree that Stolle expected Morrison to avoid using "technical terms" non-IT users might find confusing.  Morrison acknowledged that he had perhaps used overly technical terms on one occasion in July 2023, when he asked users to identify printers by their IP addresses.  Morrison doesn't dispute that his supervisor spoke with him on July 27, 2023, regarding that incident and counseled him to avoid using overly technical terms when

communicating with non-IT users. Morrison testified that, following that discussion, he avoided using technical terms in his subsequent communications with non-IT users.

¶ 14 Stolle contended, however, that Morrison continued using overly technical terms in his communications with non-IT users, requiring his supervisor to meet with him multiple times to reiterate Stolle's expectations. Stolle's representative, Darnell, testified at the hearing that this pattern of unacceptable communications, in part, proximately caused Morrison's job separation, explaining that he "was getting too involved in too much IT detail which then just confused employees that weren't trained in IT issues." We defer to the hearing officer's decision to credit the testimony of Stolle's representative. *See Hoskins v. Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10. Based on the testimony presented, we conclude that substantial evidence supports the hearing officer's finding that Morrison's job separation was partly caused by his failure to meet established job performance standards with respect to communications with non-IT users.

## D.    Server Access

¶ 15    Finally, the hearing officer also found that Stolle terminated Morrison's employment, in part, because his decision to access an email server without authorization violated Stolle's job performance standards regarding cyber security.  The hearing officer further found that Morrison's supervisor had counseled Morrison regarding cyber security best practices after this incident.

¶ 16    Morrison doesn't dispute that he accessed a Stolle email server without authorization on January 5, 2024.  Though Morrison contends he didn't require the CIO's authorization to access the server, a written Stolle policy admitted into evidence says that "[l]ogging into Stolle's servers require[s] approval from Stolle's CIO." Because this policy is clear on its face and the relevant facts are undisputed, the record supports the hearing officer's finding that Morrison failed to meet established job performance or other defined standards in this instance.

## III.    Insufficient Remaining Factual Findings

¶ 17    The hearing officer found that in each of the foregoing instances Morrison violated Stolle's established job performance or other defined standards, and that these violations, collectively,

9

proximately caused his job separation. Given our holding that substantial evidence didn't support the hearing officer's finding that Morrison's use of the "chrisstolle" username violated Stolle's confidentiality policies, we can't discern from the record whether the fact finder would have found that Morrison's second and third violations (his overly technical communications and his unauthorized server access) proximately caused his job separation.

¶ 18    Nor can we discern whether the fact finder would have found that the totality of the circumstances, narrowed to only those two violations, supported a finding that Morrison was at fault for his job separation. Removing the incident involving Morrison's Microsoft online forum post from the equation leaves insufficient factual findings to support the legal conclusions of disqualification and fault. For this reason, we set aside the Panel's order and remand the case for further factual findings on these specific issues. *See, e.g., City & Cnty. of Denver v. Indus. Claim Appeals Off.*, 833 P.2d 881, 883 (Colo. App. 1992) (setting aside the Panel's order and remanding for further findings on claimant's eligibility for benefits); *Esparza v. Indus. Comm'n,* 702 P.2d 288, 290 (Colo. App. 1985) (similar).

10

## IV. Disposition

¶ 19 The Panel's order is set aside and the case is remanded to the Panel for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE LIPINSKY concur.